Jeremy I. Lessem, Esq (SBN 213406)
Jamal L. Tooson, Esq (SBN 261373)
Lessem, Newstat & Tooson, LLP
3450 Cahuenga Blvd W. Ste. 102
Los Angeles, CA 90068
Phone 818-582-3087 | Fax 818-484-3087
Jeremy@LNlegal.com

Attorney for Plaintiffs
Aimee Noho

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIE NOHO, individually and as successor in interest to ABDOU RAHMAN NYAN, deceased<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SANTA BARBARA; SERGEANT ERIC DELGADILLO; DEPUTY ANTHONY MUNETON; DEPUTY BRUNO BERTUZZI; DEPUTY DYLAN DARGA; DOES 1-10, Defendants.<br><br>Defendants. | **Case No.:**<br><br>COMPLAINT FOR DAMAGES<br><br>1. 42 U.S.C. §1983 (Excessive Force)<br>2. 42 U.S.C. §1983 (Municipal Liability)<br>3. Battery (Wrongful Death & Survivorship)<br>4. Negligence (Wrongful Death & Survivorship)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff AMIE NOHO, individually and as successor in interest to ABDOU RAHMAN NYAN individually and as successor in interest, hereby alleges against Defendant COUNTY OF SANTA BARBARA; SERGEANT ERIC

DELGADILLO; DEPUTY ANTHONY MUNETON; DEPUTY BRUNO BERTUZZI; DEPUTY DYLAN DARGA; DOES 1-10, as follows:

## I. JURISDICTION AND VENUE

1. This case arises under 42 U.S.C. §1983 under the fourth and fourteenth amendments of the United States Constitution. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 1343. This Court also has supplemental jurisdiction over Plaintiff's state law claims arising pursuant to 28 U.S.C. §1367(a).

2. Plaintiffs' claims arise out of a course of conduct involving officials from the County of Santa Barbara, State of California, and within this judicial district. Venue is proper in this Court under 28 U.S.C. §1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

3. Plaintiffs have exhausted their remedies pursuant to Cal. Gov. § 910 et seq. by filing a comprehensive and timely Notice of Claim on the County of Santa Barbara on or about September 8, 2021, which was denied by operation of law.

## II. PARTIES

4. Decedent Abdou Rahman Nyan ("DECEDENT") was, at all times relevant hereto, a transient currently residing in the County of Santa Barbara and a United States Army veteran.

5. Plaintiff AMIE NOHO is DECEDENT's natural mother, sole heir at law, and successor in interest. She is a resident of the State of California and resided within the State of California and the County of Santa Barbara at all times herein alleged. Plaintiff AMIE NOHO sues in her individual capacity as the mother of DECEDENT and also as the successor in interest to DECEDENT. She seeks both survival and wrongful death damages under law.

6. DECEDENT had no spouse, no children, and his father predeceased him.

7. Plaintiff AMIE NOHO is DECEDENT's successor in interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action as the natural mother of DECEDENT. Her declaration pursuant to CCP §377.32 is attached hereto as Exhibit A.

8. At all relevant times, Defendant County of Santa Barbara ("Defendant COUNTY") is a legal and political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by various government agents and officers. Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and employees, including the Santa Barbara County Sheriff's Department and its agents and employees. At all relevant times, Defendant COUNTY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, Defendant COUNTY was the employer of Defendants SERGEANT ERIC DELGADILLO, DEPUTY ANTHONY MUNETON, DEPUTY BRUNO BERTUZZI, DEPUTY DYLAN DARGA and Doe Defendants 1-10 (also referred to collectively as "individual defendants") The Santa Barbara County Sheriff's Department ("SHERIFF'S DEPT." and "SBCSD") is a department within the County of Santa Barbara.

9. Defendant COUNTY is vicariously liable for the acts alleged under state law of their employees under Government Code §815.2.

10. Defendant Sergeant ERIC DELGADILLO was at all relevant times a duly authorized employee and agent of the Santa Barbara Sheriff's Department and was acting under color of law and within the perceived course and scope of his

duties as a peace officer and Sergeant for the Santa Barbara County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County of Santa Barbara.

11. Defendant Deputy ANTHONY MUNETON was at all relevant times a duly authorized employee and agent of the Santa Barbara Sheriff's Department and was acting under color of law and within the perceived course and scope of his duties as a peace officer and deputy for the Santa Barbara County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County of Santa Barbara.

12. Defendant Deputy BRUNO BERTUZZI was at all relevant times a duly authorized employee and agent of the Santa Barbara Sheriff's Department and was acting under color of law and within the perceived course and scope of his duties as a peace officer and deputy for the Santa Barbara County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County of Santa Barbara.

13. Defendant Deputy DYLAN DARGA was at all relevant times a duly authorized employee and agent of the Santa Barbara Sheriff's Department and was acting under color of law and within the perceived course and scope of his duties as a peace officer and deputy for the Santa Barbara County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County of Santa Barbara.

14. Plaintiffs are informed and believe and thereon allege that Defendants sued herein as DOES 1 through 10, inclusive, were employees of Defendant COUNTY, including but not limited to, officers, supervisors, and civilian staff of the County of Santa Barbara Sheriff's Department, and were at all relevant times acting in the course and scope of their employment and agency and under color of law. Each Defendant is the agent of the other. Based on information and belief, these Does

were present at the scene of Decedent's shooting, observed the use of excessive force against DECEDENT and either participated in or failed to intervene in such conduct. Additionally, Doe Defendants may include supervisors, administrators, or policy makers responsible for decisions related to the incident or the events leading up thereto or training and supervision of Doe Deputies. The rank or role of each Doe is also currently unknown and these Does may include supervisors or persons which may impact such person's responsibilities under law and the applicable claims against them. Plaintiffs allege that each of the Defendants named as a "DOE" was in some manner responsible for the acts and omissions alleged herein, and Plaintiffs will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained. The identity of Does is currently unknown due to the early stage of the case but it is anticipated that such identities will be learned after discovery is permitted.

15. Plaintiffs are informed, believe, and thereon allege that at all times material herein, each fictitiously named Defendant, was either the true Defendant or the agent and employee of each other Defendant and in doing the things alleged herein, was acting within the scope and purpose of such agency and with the permission and consent of, and their actions were ratified by, the other Defendants.

16. Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants. Each paragraph of this Complaint is expressly incorporated into each cause of action which is a part of this Complaint. The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Decedent and Plaintiffs.

17. To the extent a claim is based on violation of DECEDENT'S rights, such claim is asserted as a survival claim as allowed by California Code of Civil Procedure § 377.30 and 377.34 and other relevant laws.

## III. FACTS COMMON TO ALL CLAIMS FOR RELIEF

18. Plaintiff repeats and re-alleges each and every allegation in paragraph 1-17 of the Complaint with the same force and effect as if fully set forth herein.

19. On October 20, 2025, the DECEDENT experienced a mental-health crisis after being attacked by a large dog immediately outside of a Ralph's grocery store located in Goleta, California. Goleta is located within the County of Santa Barbara.

18. Seeking safety and refuge, DECEDENT went inside the Ralph's grocery store and entered the men's bathroom located at the back of the store.

19. Defendants ERIC DELGADILLO, ANTHONY MUNETON, BRUNO BERTUZZI, DYLAN DARGA and DOES 1-10, arrived at the Ralph's grocery store after receiving a call relating to the incident outside the store involving DECEDENT. Responding law enforcement personnel, including Defendants ERIC DELGADILLO, ANTHONY MUNETON, BRUNO BERTUZZI, DYLAN DARGA and DOES 1-10, were made aware that DECEDENT had entered the Ralph's store and gone into men's bathroom.

20. Defendants BERTUZZI and DARGA were the first to arrive on scene. They encountered DECEDENT alone in a bathroom stall. DECEDENT was bleeding and verbally interacting with deputies. Defendant DARGA held the bathroom door open while Defendant BERTUZZI removed a long stick and backpack from the bathroom stall. Deputy BERTUZZI then called for Defendant MUNESTON to respond to the bathroom area. These Defendants continued to interact with DECEDENT including asking him to leave the stall to which DECEDENT refused.

21. Before any deputy fired a weapon, law enforcement, including named Defendants and Does, were repeatedly told facts making clear that DECEDENT was a person in crisis. A 911 caller described DECEDENT as “very mentally ill,” and responding deputies were informed that he had gone into the Ralph’s store and then into the public bathroom area in the back of the store.

22. Responding law enforcement personnel, including named Defendants and Does, knew DECEDENT was inside a public bathroom by himself. They knew he was contained in a defined, limited, indoor location. They knew the bathroom area had a door. They knew there were deputies on scene. They knew additional deputies were arriving. They knew less-lethal resources had been requested. They knew Sergeant DELGADILLO was bringing, or had access to, additional less lethal resources including a ballistic shield and 40-millimeter launcher and was only minutes away.

23. Rather than slow the situation down and establish a safe, disciplined, and adequate perimeter, Defendants BERTUZZI, DARGA, STOVALL, MUNETON and Doe Defendants, created and maintained a dangerously deficient containment plan in a confined grocery-store hallway. Defendants did not create sufficient distance. Defendants did not establish a proper inner and outer perimeter. Defendants did not fully secure all avenues of approach and exit before forcing a close-range confrontation. Defendants did not ensure that all deputies were in coordinated positions with adequate cover. Defendants did not wait for the ballistic shield and 40-millimeter launcher to be deployed before escalating toward lethal force.

24. Prior to any shots being fired, DECEDENT was isolated in the men’s bathroom area. Deputy Defendants had removed a bamboo stick and backpack from the immediate area. Defendant Deputies had observed DECEDENT inside the bathroom alone. Defendant Deputies had communicated with DECEDENT. Deputies knew he responded verbally. Deputies knew he said he was injured.

Deputies knew he asked for "one second" and said he needed to "get rid of" his belongings. These facts required patience, crisis intervention, time, distance, cover, and disciplined containment.

25. Instead of acting in a reasonable, safe and prudent fashion, Defendants BERTUZZI, DARGA, STOVALL, MUNETON and Doe Defendants unnecessarily compressed the encounter into a close-quarters confrontation in a narrow hallway. Specifically, these deputies positioned themselves close enough to the bathroom door that, when DECEDENT emerged, he immediately came within approximately five feet of responding deputies. That proximity was not inevitable. It was the direct result of Defendants' tactical choices, including their failure to set a proper perimeter and create adequate distance from a contained person in crisis.

26. Defendants, including BERTUZZI, DARGA, STOVALL, MUNETON and Doe Defendants, created this unsafe and unnecessary condition despite knowing the immediate bathroom area could be made safe. Defendant deputies had evacuated nearby civilians, cleared the women's bathroom, removed items from the immediate area, moved shelves, and attempted to block access points. Having taken those steps, Defendants had no reasonable need to force or accept a close-range encounter with DECEDENT before less-lethal resources, which they knew to be only be minutes away, were in place and ready for use.

27. Defendant DELGADILLO, a supervising sergeant, arrived shortly before the shooting with a ballistic shield and a 40-millimeter launcher but failed to ensure those resources were deployed before deadly force was used. Rather than establish command, slow the deputies down, confirm a perimeter, coordinate positions, and deploy the less-lethal tools he brought to the scene, DELGADILLO entered the store and approached through the warehouse area without first ensuring that a safe tactical plan was in place.

28. After responding deputies, including BERTUZZI, DARGA, STOVALL, MUNETON and Doe Defendants, placed themselves in close proximity to

DECEDENT, relied on improvised shelving rather than a proper law-enforcement perimeter, and positioned themselves in a way that left them only seconds to react, DECEDENT exited the bathroom area and was immediately shot by Defendant MUNETON and Defendant DELGADILLO. Deputy MUNETON fired multiple rounds from his service weapon striking DECEDENT multiple times, and Sergeant DELGADILLO fired an additional round from his duty weapon striking DECEDENT once in the back.

29. DECEDENT died at the scene as a direct and proximate result of this shooting.

30. At the time of the shooting, DEFENDANTS, and each of them, knew or reasonably should have known DECEDENT was suffering from a psychiatric emergency.

31. DEFENDANTS had access to less-lethal tools and tactics including but not limited to a taser, ballistic shield, 40-millimeter launcher, communication, cover, distance, containment, controlled evacuation, and coordinated perimeter tactics.

32. DEFENDANTS failed to employ de-escalation techniques.

33. DEFENDANTS failed to create time, distance, and proper containment before using deadly force against DECEDENT.

34. DEFENDANTS failed to adequately utilize mental-health resources.

35. DEFENDANTS failed to exhaust reasonable alternatives to deadly force.

36. Despite DECEDENT being contained, isolated, and known to be in crisis, and despite the availability of time, distance, cover, containment, and less-lethal resources, Defendants shot DECEDENT, causing his death.

37. The force used by DEFENDANTS, including Defendants DELGADILLO and MUNETON and DOES 1-10, was unreasonable and excessive.

38. The actions and inactions used by DEFENDANTS, including

Defendants BERTUZZI, DARGA, STOVALL and DOES 1-10, including failing to create time, distance, and proper containment, utilize less lethal force, adequately utilize mental-health resources, and employ de-escalation techniques, was unreasonable, illegal and made the use of deadly force more likely and directly contributed the unnecessary, illegal and excessive use of deadly force against DECEDENT.

39. On information and belief, COUNTY failed to discipline, retrain, reprimand, or otherwise meaningfully review the conduct of involved personnel.

40. COUNTY maintained customs, practices, and policies that tolerated excessive force and inadequate responses to persons in mental-health crisis.

41. DECEDENT suffered conscious pain, fear, emotional distress, and physical suffering prior to death.

42. Plaintiff incurred funeral and burial expenses and permanently lost the love, society, companionship, comfort, and support of her son. A true and correct copy of his death certificate is attached hereto as Exhibit B.

## **FIRST CAUSE OF ACTION**

**42 U.S.C. §1983 – Excessive Force**

**By Plaintiff AMIE NOHO Against DELGADILLO, MUNETON; BERTUZZI, DARGA, STOVALL and DOES 1-10**

43. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-42 of the Complaint with the same force and effect as if fully set forth herein.

44. Defendants DELGADILLO, MUNETON, BERTUZZI, DARGA, STOVALL and DOE Defendants acted under color of law.

45. Defendants, including DELGADILLO, MUNETON, and DOE Defendants, used deadly force against an unarmed person experiencing a mental-health crisis.

46. DEFENDANTS MUNETON, BERTUZZI, DARGA, STOVALL and DOE Defendants, through various actions and inactions described in detail herein, were all integral participants in the unlawful use of deadly force by Defendants DELGADILLO and MUNETON and knew about and acquiesced in the constitutionally defective conduct. The actions and inactions of Defendants MUNETON, BERTUZZI, DARGA, STOVALL and DOE Defendants also set in motion a series of acts by others, including the shooting of DECEDENT, which they knew or reasonably should have known would cause excessive force to be used against DECEDENT.

47. Less intrusive and non-lethal alternatives existed to DEFEDANTS' unlawful and excessive use of force.

48. Defendants failed to utilize de-escalation, communication, containment, and less-lethal options despite such options being available to named individual Defendants.

49. Defendants failed to intervene in one another's unreasonable conduct.

50. The shooting violated DECEDENT'S rights under the Fourth Amendment as applied by the Fourteenth Amendment.

51. Defendants, and each of them, acted willfully, maliciously, oppressively, and with reckless disregard for DECEDENT'S constitutional rights.

52. DECEDENT suffered severe physical pain, emotional distress, fear, loss of enjoyment of life, and ultimately death.

53. Plaintiff NOHO, successor in interest to DECEDENT, seeks survival damages for the violation of DECEDENT'S rights, including all damages recoverable under CCP §377.34.

54. Plaintiff NOHO also seeks attorneys' fees and costs as permitted by law.

## SECOND CAUSE OF ACTION

**42 U.S.C. §1983 – Municipal Liability – Unconstitutional Custom or Policy**

**By Plaintiff AMIE NOHO against Defendants**

**County of Santa Barbara and Does 1-10**

55. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-54 of the Complaint with the same force and effect as if fully set forth herein.

56. The individual defendants acted pursuant to official customs, practices, and policies of COUNTY.

57. COUNTY policymakers maintained unconstitutional practices including inadequate training regarding mental illness, crisis intervention, de-escalation, use of force, supervision, investigation, discipline, and review of shootings.

58. Prior to the incident involving Plaintiff, Defendant COUNTY was on notice of recurring constitutional concerns arising from the use of force by Sheriff's deputies, particularly in encounters involving individuals suffering from mental illness and behavioral crises. On January 13, 2024, Santa Barbara County Sheriff's deputies fatally shot Wesley Klotthor after his family repeatedly sought assistance from law enforcement because he was experiencing severe mental illness, paranoia, delusions, and auditory hallucinations. Publicly released reports indicate that Sheriff's personnel were aware that Klotthor was suffering from an acute mental-health crisis before the encounter escalated and deputies fired multiple rounds, killing him. Additionally, prior civil-rights litigation against the County and Sheriff's Department alleged excessive force, ratification, inadequate training, and unconstitutional customs and practices relating to deputy conduct. These incidents, among others to be identified through discovery, placed County policymakers on actual and constructive notice that existing policies, training, supervision, discipline, and review mechanisms were inadequate to prevent

unconstitutional uses of force. Despite such notice, the County failed to implement reasonable corrective measures, thereby exhibiting deliberate indifference to the constitutional rights of individuals with whom Sheriff's deputies came into contact.

59. COUNTY failed to adequately select, retain, supervise, and discipline deputies known or reasonably believed to possess dangerous propensities.

60. COUNTY failed to meaningfully investigate prior incidents involving force against persons in crisis.

61. COUNTY ratified the conduct alleged herein by approving, condoning, or failing to condemn the actions of involved deputies.

62. COUNTY policymakers possessed actual or constructive knowledge of these deficiencies.

63. COUNTY acted with deliberate indifference to the constitutional rights of DECEDENT and similarly situated persons.

64. These customs and practices were a moving force behind DECEDENT'S death.

65. COUNTY did not discipline, reprimand, train, suspend, or otherwise penalize individual defendants or any other person in relation to the events leading up to DECEDENT’s death.

66. Due to the aforementioned acts and omissions, and as a direct and proximate result of these policies, procedures, customs, and practices, DECEDENT suffered extreme physical pain and emotional distress up until his death, as well as loss of life, enjoyment of life, and earning capacity and was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

67. Due to the aforementioned acts and omissions, and as a direct and

proximate result of these policies, procedures, customs, and practices, DECEDENT was killed and Plaintiff NOHO has suffered love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.

68. Accordingly, Defendant COUNTY and supervisory DOES 1-10 are liable to Plaintiff for compensatory damages under 42 U.S.C §1983.

69. Plaintiff NOHO brings this claim individually and as successor in interest to DECEDENT and seeks both survival and wrongful death damages under this claim.

**THIRD CAUSE OF ACTION**

**Battery (Wrongful Death and Survival Claim)**

**By Plaintiff AMIE NOHO Against all Defendants**

70. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 69 of the Complaint with the same force and effect as if fully set forth herein.

71. At all relevant times, defendants DELGADILLO, MUNETON, BERTUZZI, DARGA, STOVALL and DOES 1-10 were acting within the course and scope of their duties as a sworn peace officers for COUNTY.

72. Individual Defendants, including DELGADILLO, MUNETON, BERTUZZI, DARGA, STOVALL and DOES 1-10, intentionally used harmful and offensive force.

73. DECEDENT did not consent to the force used against him, including, but not limited to, not consenting to the 6 shots which struck his body and killed him.

74. At the time of the shooting, DECEDENT posed no deadly threat to individual Defendants, or any other individuals present at the scene.

75. The use of force against DECEDENT was unreasonable and excessive.

76. As a direct and proximate cause of individual Defendants' conduct, DECEDENT suffered extreme pain and emotional distress up until his death, as well as loss of life, enjoyment of life, and earning capacity. The conduct of individual Defendants' was a substantial factor in causing DECEDENT's injuries and death.

77. As a direct and proximate cause of individual Defendants' conduct, DECEDENT suffered survival damages under CCP §377.34 including from the time he was shot until his death later at the hospital.

78. As a direct and proximate cause of individual Defendants' conduct, Plaintiff AIMEE NOHO has been deprived of life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT. This deprivation will continue until her death.

79. The conduct of Defendants DELGADILLO, MUNETON, BERTUZZI, DARGA, STOVALL and DOES 1-10 was willful, wanton, malicious, and with reckless disregard for the rights, life, and safety of DECEDENT and Plaintiff NOHO and warrants exemplary and punitive damages.

80. Plaintiff NOHO, brings this claim both as successor in interest to DECEDENT as well as an individual and seeks survival damages and wrongful death damages.

81. Defendant COUNTY is vicariously liable for the conduct of individual Defendants pursuant to Government Code §815.2(a).

## FOURTH CAUSE OF ACTION

**Negligence (Wrongful Death and Survival Claim)**

**By Plaintiff Aimee Noho Against all Defendants**

82. Plaintiff repeats and realleges each and every allegation in Paragraphs 1

through 81 of this Complaint with the same force and effect as if fully set forth herein.

83. On or about October 20, 2025, the date of the shooting, DECEDENT was entitled to the duty of due care by Defendants, including DELGADILLO, MUNETON, BERTUZZI, DARGA, STOVALL and DOES 1-10.

84. On or about said date, individual Defendants breached the duty of care owed to DECEDENT in that they negligently subjected DECEDENT to injury, harm and damage through the commission of the various acts and omissions and violations of COUNTY policies including but not limited to:

a. The use of deadly force without giving warnings;
b. The use of deadly force without giving orders or otherwise reasonably communicating with Decedent;
c. The use of deadly force without knowledge of the seriousness of the crime at issue or the risk Decedent posed;
d. The use of deadly force against a subject who did not pose a danger to anyone, imminent or otherwise;
e. The failure to use de-escalation techniques;
f. The failure to use well established tactics at SBCSD and in the law enforcement community, including without limitation, the option to take cover or properly contain;
g. The failure to exhaust all alternatives before shooting;
h. The failure to use the use of force continuum and use only the amount of force that was reasonable under the totality of the circumstances;
i. The failure to intervene in a partner's unreasonable use of force;
j. As otherwise described in this Complaint.

85. In committing the aforementioned acts and omissions, Defendants' breach of duty was negligent, unnecessarily escalated events, and directly caused Decedent to suffer severe physical, emotional and mental distress, anxiety and mental

anguish up to and causing his death.

86. Through the commission of the various acts and omissions previously described in this Complaint, individual Defendants, and each of them, breached their duties of care owed to Decedent, such that Decedent suffered physiological and physical injury, including serve pain and anguish and ultimately death.

87. Due to the aforementioned acts and omissions, DECEDENT was killed and Plaintiff NOHO has suffered love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.

88. Plaintiff NOHO brings this claim in each case both individually and as successors-in-interest and seeks both survival and wrongful death damages under state law.

89. Defendant COUNTY is vicariously liable for the conduct of individual Defendants pursuant to Government Code §815.2.

## IV. PRAYER FOR RELIEF

Wherefore, Plaintiffs request entry of judgment in their favor and against Defendants as follows:

1. For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in a sum according to proof at trial;
2. For special damages in an amount according to proof;
3. For punitive and exemplary damages against each individual and Doe Defendant, but not against Defendant COUNTY, in an amount according to proof;
4. For interest as allowed by law;
5. For cost of suit including attorney’s fees pursuant to 42 U.S.C §1988 and other relevant law;
6. For such other and further relief as the court may deem proper.

7. Plaintiff demands a trial by jury on all issues so triable

**LESSEM, NEWSTAT, & TOOSON, LLP.**

DATED: July 27, 2026

By:

*/s/ Jeremy I. Lessem*

Jeremy I. Lessem
Jamal Tooson
Attorneys for Plaintiff